UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MICHAEL GOZA,

    Plaintiff,

v.                                                                                              Case No. 17-cv-2873

MEMPHIS LIGHT, GAS AND WATER DIVISION,
a division of the City of Memphis, Tennessee,

    Defendant.

**PLAINTIFF'S REPLY TRIAL BRIEF**

Plaintiff Michael Goza submits this Reply to Defendant MLGW's Trial Brief and in Support of his claims for First Amendment Retaliation/Discrimination under § 1983 and for racial discrimination in violation of 42 U.S.C. § 1981. In support, Mr. Goza states as follows:

**I. Plaintiff's Claim for First Amendment Retaliation/Discrimination under § 1983**

    **A. Final Decision**

In its post-trial memorandum, MLGW doubles down on an argument that has already been rejected by this Court, namely that Mr. Collins was not a final policymaker and his delegation of decisionmaking power did not constitute a final decision as Mr. Goza's grievances are still pending. Of course, the Court found in its order on summary judgment that Mr. Jerry Collins, the President/CEO of MLGW, pursuant to the City Charter had "policymaking power over matters of employee discipline, and that his decisions are final and unreviewable." (Dkt. 92 at 22).

This time around MLGW relies almost exclusively on <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 121 (1988), for the proposition "that when a public employee initiates an internal review of an adverse employment action but initiates a lawsuit before that review is completed, Section

1

1983 does not apply because the public employer has not officially spoken." (Dkt. 112 at 5). The problem for MLGW is that this is an entirely inaccurate statement of law and summary of the Supreme Court's holding in Praprotnik.

The Supreme Court in Praprotnik reaffirmed Pembaur v. Cincinnati, 475 U.S. 469 (1986), in holding that the determination of who has "final policymaking authority" is a question of "state law" and not one of "fact in the usual sense" nor of federal law. Id. In determining whether a final decision had been made by the individual or entity with "final policy making authority," the Praprotnik court looked, as this Court did in its order on summary judgment, to the City Charter to determine who had "final policymaking authority." The city charter in Praprotnik gave the power to the Mayor and Aldermen to enact ordinances relating to personnel administration and to the Civil Service Commission "to consider and determine any matter involved in the administration and enforcement of this [Civil Service] article and the rules and ordinances adopted in accordance therewith that may be referred to it for decision by the director [of personnel] . . . ." Praprotnik, 485 U.S. at 126. It was from these charter provisions that the Court ruled that a final decision had not yet been made by any person or entity with "final decisionmaking authority" because no one with the prescribed power under state law had acted. Id. at 127.

In this case, the charter provisions governing MLGW give policymaking authority over employee discipline to the President/CEO, Mr. Jerry Collins, who both wielded that power and explicitly delegated that power to Mr. Goodloe, who exercised it. Specifically, Mr. Collins delegated the power to investigate Mr. Goza and make decision as to any discipline. Mr. Collins also approved of Mr. Goza's termination. Accordingly, the employment decisions at issue in this case were carried out by the individual with final policymaking authority or the individual who had that power delegated to him. Notably, this factual scenario is entirely consistent with this

Court's decision in Boone v. Towne of Collierville, when this court held that the town administrator who had final policymaking authority under state law affirmed the decision against the plaintiff. 2017 WL 980351 (W.D. Tenn. Mar. 13, 2017).

Significantly, MLGW acknowledges that the Supreme Court has held in Porter v. Nussle, 534 U.S. 516, 523 (2002), that "[o]rdinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court," but MLGW fails to explain how the application of that standard does not apply in this case. (Dkt. 112 at 8). Further, MLGW fails to make any argument as to how the holdings in Delaware State Coll. v. Ricks, 449 U.S. 250, 261 (1980), and Kessler v. Board of Regents, 738 F.2d 751, 754 (6th Cir. 1984) are not dispositive of defense that Mr. Goza's must exhaust the grievance process prior to filing suit. As the Court has already ruled on this question of law, MLGW's re-arguement of this same issue is without merit.

### B. Application of Pickering

As to the evidence of Mr. Goza's § 1983 First Amendment retaliation claim, MLGW failed to carry its burden in making a "particularly strong showing" that it could reasonably predict Mr. Goza's speech would disrupt its work in light of the manner, time and place the speech was uttered as well as the context in which the dispute arose. Leary v. Daeschner, 228 F.3d 729, 737-38 (6th Cir. 2000); Gillis v. Miller, 845 F.3d 677, 687 (6th Cir. 2017).

First, in its brief, MLGW half-heartedly and without any legal support claims that Mr. Goza's speech was "not 'political' . . . but highly inflammatory, racist rhetoric that is offensive to both Caucasians and African-Americans." (Dkt. 112 at 10). MLGW appears to hope that simply labeling Mr. Goza's speech as racist and inflammatory will change the fact that his speech was made on "matters of public concern," which include "any matter of political, social, or other

concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983).  All of Mr. Goza's speech was on matters of public concern, regardless of whether MLGW found it offensive, as he was opining on the propriety of the existence of Confederate statues in public parks, issues of race, and the federal government's treatment of its citizens.  MLGW disagreement with those opinions is irrelevant to "public concern" analysis.

Next, MLGW to support its contention that it had a basis to reasonably predict that its work would have been disrupted cites to Snipes v. Volusia County.  In Snipes, the plaintiff—a law enforcement officer—sent racist text messages while on duty.  704 F. App'x 848 (11th Cir. 2017). The Eleventh Circuit noted the fact that the plaintiff sent the messages while on duty and the fact that he was a law enforcement officer all weighed against him under Pickering. Id. at 853-54 & fn. 4 (noting the "long-recognized heightened need for order, loyalty, and harmony in a quasi-military organization such as a police or fire department.").  Those critical factors are both absent in Mr. Goza's case, thus rendering the opinion of little utility to the court.

MLGW's reliance on Cochran v. City of Atlanta, Georgia is equally misplaced.  In Cochran, the Chief of the Atlanta Fire Department published a book that contained traditional "Christian teachings" the many took as misogynistic and homophobic.  The Fire Chief identified himself as the Chief of the Atlanta Fire Department in the book and the proceeded to distribute the book to subordinates at work events.  289 F. Supp. 3d 1276, 1282-84 (N.D. Ga. 2017).  The court granted summary judgment in favor of defendant employer under Pickering noting that there was actual disruption caused by the plaintiff who occupied a essential leadership position/role as the head of the fire department. Id. at 1289-91.  The court also found that it was especially relevant that plaintiff distributed his book at work, sometimes unsolicited, to subordinates; instead of simply the publication and distribution occurring purely outside of the workplace. Id. at 1289-91.

4

None of these factors exist or weight against Mr. Goza, who did not occupy a leadership position, made all of his comments outside of work, and caused no actual disruption. This factual differentiation makes <u>Cochran</u> of little relevant to the facts before the Court.

In attempting to address the facts in this case, MLGW relies on pure speculation without any substantive evidence. It again claims concerns over Mr. Goza's safety while admitting that no evidence existed that he was in any danger or that a threat existed to his safety, as Ms. Leonard testified. Without any actual evidence of concern for Mr. Goza on the job, MLGW cannot meet its burden especially because Mr. Goza worked for four days without incident after his statements were published and known to the public.

MLGW also claims that it was reasonable to anticipate disruption based on public complaints, which were acknowledged to be largely outside of the knowledge of the decisionmakers in this case. But the decision must be assessed in context of when it was made. For ten days before MLGW made its offer to demote Mr. Goza on September 7, 2018 and for 35 days between August 29, 2018 and terminating Mr. Goza on October 3, 2018, MLGW received no complaints from the public about Mr. Goza. MLGW argues for the first time in its brief that this lack of complaints resulted from Mr. Goza's suspension, but there is no evidence in the record that anyone from the public was aware Mr. Goza had been suspended. Given this context, it is not reasonable to believe that MLGW's business operations were likely to be disrupted by any of Mr. Goza's speech. Because MLGW has failed to meet its particularly strong burden in demonstrating that it was reasonably likely to anticipate disruption to its work, the Court should rule in favor of Mr. Goza.

## II. MLGW Discriminated Against Mr. Goza Because of His Race

### A. Background Circumstances

As to Mr. Goza's racial discrimination claims, MLGW argues that Mr. Goza has failed to demonstrate the "background circumstances" necessary to prove that MLGW is the type of employer to engage in racial discrimination. MLGW acknowledges, of course, that Mr. Goodloe's race and his role as the delegated decisionmaker would meet this burden, but attempts to minimize his influence in the case. Mr. Goodloe, however, undisputedly was the individual who was designated to "handle" Mr. Goza employment matter and approved his demotion and termination. This is sufficient to meet the standard set by the Sixth Circuit. Zambetti v. Cuyahoga Cmty. College, 314 F.3d 249, 257 (6th Cir. 2002) (holding that decision-maker being African-American was enough to satisfy "background circumstances in reverse race discrimination claim).

Further, MLGW also attempts to minimize the influence of Gale Carson, an African-American and the Director of Communications for MLGW, on the decision. This effort is contrary to the evidence at trial. Notably, Ms. Leonard admitted she knew Ms. Carson wanted Mr. Goza terminated and that she felt pressure from the top to terminate him. This evidence alone is sufficient to prove the "background circumstances" necessary to prove the first element of the prima facie case.

Moreover, MLGW's own witness—Ms. Leonard—testified that Mr. Goza's workplace was all of Shelby County and that the issue of race was a "hot topic" and sensitive issue at the time of the decision. Her written statements about the reaction of the African-American community to Mr. Goza's advocacy for the preservation of the confederate statues is further evidence that race was taken directly into account in the decision. MLGW contends that using the racial tension in the community, which it considered Mr. Goza's workplace, to satisfy the background

6

circumstances requirement would cause absurd results.  Those results, however, are of MLGW's own making as it contends that its policies as related to Mr. Goza's speech and the treatment of its customers apply to employees regardless if they are on-the-clock or at work, even extending to normal interactions between neighbors from a worker's backyard.  This expansive application of the workplace is despite of no such definitional statement in MLGW's policies.

### B. Comparators

MLGW's last argument against liability is that Mr. Goza has failed to offer any valid comparators for discrimination.  The Court has already held that Mr. Stewart and Mr. Taylor are valid comparators under the standard set forth in Ercegovich.  In that case, the Sixth Circuit held that a "plaintiff need *not demonstrate an exact correlation* with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather…the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself *must be similar in all of the relevant aspects*." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir.1998) (emphasis added). Here, MLGW's centralized Employment Services Department conducted the investigations and issued discipline, not individual supervisors.  Further, the policies governing the workplace actions were generally applicable, company-wide policies that were not dependent on position.

In addition to Messrs. Stewart and Taylor, MLGW's defenses rendered the previously excluded comparators of Greg Carwell and Brenda Flowers relevant.  MLGW admitted that it had created an accommodation for Greg Carwell (AA/male) after he murdered a man in Shelby County, allowing him to work internally for a year to ensure his safety, despite saying that Mr. Goza could not receive a similar accommodation because MLGW did not pay individuals equal money for less work.  Brenda Flowers (AA/female), who repeatedly threatened a customer while

on duty and used the MLGW confidential system to track this customer down, received very little discipline despite MLGW claiming that Mr. Goza had to be removed from customer care because MLGW's reputation had to be beyond repute. In comparing Messrs. Stewart, Taylor, and Carwell, as well as Ms. Flowers, to Mr. Goza, it becomes clear that at MLGW if you are African-American, you can kill someone (e.g., Carwell), threaten to kill them on social media (e.g., Stewart), threaten violence against them in person (e.g., Flowers), and have repeated complaints of sexual harassment from customers (e.g., Taylor) and still continue your employment. But if you are white and exercise your First Amendment rights on your own time without causing any harm to any customer, you will be demoted and then terminated. Plain and simple, MLGW holds its African-American workers to a very different standard than it held Mr. Goza.

## V. Conclusion

For the foregoing reasons, the Court should find for Mr. Goza and award damages and other relief consistent with those requested.

Respectfully submitted,

**DONATI LAW, PLLC**

/s/Bryce W. Ashby
Donald A. Donati #8633
Bryce W. Ashby #26179
1545 Union Ave.
Memphis, TN 38104
Phone: 901/278-1004
Facsimile: 901/278-3111
don@donatilaw.com
bryce@donatilaw.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing document has been served via the Court's ECF system on counsel for Defendant on March 24, 2019.

      /s/Bryce W. Ashby